**Exhibit D**

**Liquidation Analysis**

(see attached)

## LIQUIDATION ANALYSIS

Pursuant to section 1129(a)(7) of the Bankruptcy Code (often referred to as the "Best Interests Test"), each holder of an impaired Claim or Equity Interest must either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such non-accepting holder would receive or retain if the Debtors' assets were to be liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. In determining whether the Best Interests Test has been met, the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in a chapter 7 proceeding must be determined. Such amount then would be reduced by the costs and expenses of the liquidation. Prior to determining whether the Best Interests Test has been satisfied, available Cash and the proceeds from the liquidation of the Debtors' assets would be applied to Secured claims (to the extent of the value of the underlying collateral) and to satisfy Administrative, Priority Tax and other Priority Claims, all of which are senior in priority to General Unsecured Claims, including any incremental Administrative Claims that may result from the termination of the Debtors' business and the liquidation of their assets. Any remaining Cash would be available for distribution to General Unsecured Claims and shareholders in accordance with the distribution hierarchy established by section 726 of the Bankruptcy Code.

This liquidation analysis ("Liquidation Analysis") was prepared by the Debtors with assistance from their financial advisor, and represents the Debtors' best estimate of the Cash proceeds, net of liquidation related costs, which would be available for distribution to the Holders of Claims and Interests if the Debtors were to be liquidated in chapter 7 cases that do not preserve the going concern value of the Debtors' estates. Underlying the Liquidation Analysis are a number of estimates and assumptions regarding liquidation proceeds that, although developed and considered reasonable by the Debtors and their professionals, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors and their management.

**THE INFORMATION SET FORTH IN THIS LIQUIDATION ANALYSIS IS PRELIMINARY AND IS SUBJECT TO MODIFICATION AND SUPPLEMENTATION BY THE DEBTORS AT ANY TIME UP TO THE CONFIRMATION HEARING. THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION UNDER CHAPTER 7, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE ESTIMATED HERE.**

The Liquidation Analysis assumes the Debtors' Chapter 11 cases would convert to chapter 7 as of February 29, 2016. It is also assumed that the liquidation of the Debtors would commence under the direction of a Court-appointed chapter 7 trustee and would continue for four months

(the "Wind-Down Period"), during which time all of the Debtors' major assets would either be sold or conveyed to the respective lien holders. There can be no assurances that all assets would be completely liquidated during this period.

The Liquidation Analysis was prepared based on a review of the Debtors' assets based on the latest monthly financial report as of July 31, 2015, and the Reserve Reports. Estimates of hypothetical liquidation values were determined primarily by assessing classes of assets at percentage discounts to book value and reserve value, as opposed to appraising specific assets. Other than the aforementioned Reserve Reports, the Debtors did not retain third party experts to value individual assets in preparing this analysis.

To estimate recoveries under a hypothetical liquidation under chapter 7, the Liquidation Analysis contains an estimate of the amount of claims that will ultimately become allowed claims. Estimates for various classes of claims are based solely upon the Debtors' continuing review of the claims filed in these Chapter 11 cases and the Company's books and records. No order or finding has been entered by the Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in this Liquidation Analysis.

Liquidation would likely prompt certain other events to occur, including the rejection of remaining executory contracts and unexpired leases not assumed by the purchaser.  Such events could create a larger number of unsecured creditors and would subject the chapter 7 estates to additional damage claims for the rejection of those contracts under the Bankruptcy Code. Such claims would also increase the aggregate amount of unsecured claims against the Debtors, perhaps materially, and would dilute any potential recoveries to holders of the unsecured claims. No attempt has been made to estimate additional unsecured claims that may result from such events.

### Cubic Asset Debtor

($ in millions)

| Assets | | Book / Reserve Value[1] | Estimated Recovery Rate Low | Estimated Recovery Rate High | Estimated Liquidation Value Low | Estimated Liquidation Value High |
|---|---|---|---|---|---|---|
| Cash and cash equivalents | 2 | $4.6 | 100% | 100% | $4.6 | $4.6 |
| Accounts receivable | 3 | 0.6 | 100% | 100% | 0.6 | 0.6 |
| Oil and Natural Gas Properties | | | | | | |
| Proven Developed Producing Properties | 4 | 11.8 | 85% | 95% | 10.1 | 11.2 |
| Proven Non-Producing Properties | 4 | 32.9 | 50% | 60% | 16.5 | 19.8 |
| Unproven Properties | 4 | 17.2 | - | 5% | - | 0.9 |
| Prepaid Assets | 5 | - | - | - | - | - |
| Office and Other Equipment | 6 | 0.0 | 5% | 10% | 0.0 | 0.0 |
| **Gross Proceeds Available for Distribution** | | | | | $31.7 | $37.1 |
| Trustee Fees and Expenses | 7 | | | | (1.0) | (1.1) |
| Professional Fees, Expenses & Wind Down Costs | 8 | | | | (4.0) | (3.0) |
| Administrative Claims | 9 | | | | (0.4) | (0.4) |
| Other Priority Claims | 10 | | | | - | - |
| **Net Proceeds Available for Distributions** | | | | | **$26.4** | **$32.6** |

| Distributions | | Estimated Claims 12/31/15 | Recovery Amount Low | Recovery Amount High | Implied Percent Recovery Low | Implied Percent Recovery High |
|---|---|---|---|---|---|---|
| Prepetition Secured Notes Claim | 11 | $98.2 | $26.4 | $32.6 | 27% | 33% |
| BP Claims | 13 | 6.6 | - | - | - | - |
| General Unsecured Claims | 14 | 29.7 | - | - | - | - |
| Old Equity Claim | 15 | - | - | - | - | - |

### Cubic Louisiana Debtor

($ in millions)

| Assets | | Book / Reserve Value[1] | Estimated Recovery Rate Low | Estimated Recovery Rate High | Estimated Liquidation Value Low | Estimated Liquidation Value High |
|---|---|---|---|---|---|---|
| Cash and cash equivalents | 2 | $0.2 | 100% | 100% | $0.2 | $0.2 |
| Accounts receivable | 3 | 0.3 | 100% | 100% | 0.3 | 0.3 |
| Oil and Natural Gas Properties | | | | | | |
| Proven Developed Producing Properties | 4 | 3.8 | 85% | 95% | 3.2 | 3.6 |
| Prepaid Assets | 5 | - | - | - | - | - |
| Office and Other Equipment | 6 | - | 5% | 10% | - | - |
| **Gross Proceeds Available for Distribution** | | | | | $3.7 | $4.1 |
| Trustee Fees and Expenses | 7 | | | | (0.1) | (0.1) |
| Professional Fees, Expenses & Wind Down Costs | 8 | | | | (2.0) | (1.0) |
| Administrative Claims | 9 | | | | (0.1) | (0.1) |
| Other Priority Claims | 10 | | | | - | - |
| **Net Proceeds Available for Distributions** | | | | | **$1.5** | **$2.8** |

| Distributions | | Estimated Claims 12/31/15 | Recovery Amount Low | Recovery Amount High | Implied Percent Recovery Low | Implied Percent Recovery High |
|---|---|---|---|---|---|---|
| Wells Fargo Claims | 12 | $29.9 | $1.5 | $2.8 | 5% | 9% |
| Prepetition Secured Notes Claim | 11 | 98.2 | - | - | - | - |
| BP Claims | 13 | 6.6 | - | - | - | - |
| General Unsecured Claims | 14 | 29.7 | - | - | - | - |
| Old Equity Claim | 15 | - | - | - | - | - |

**FOOTNOTES TO LIQUIDATION ANALYSIS**

*Note 1 – Book / Reserve Values*

The book values and reserve values used in the Liquidation Analysis are used as a reference point for the analysis and are assumed to be representative projections of the Debtors' assets as of February 29, 2016.

*Note 2 - Cash and Cash Equivalents*

Cash and cash equivalents consist of all cash or liquid investments with maturities of three months or less in banks or operating accounts and are assumed to be fully recoverable. The projected balance as of February 29, 2016 is based on current management projections. The cash and cash equivalents are encumbered in favor of the Prepetition Secured Noteholders.

*Note 3 – Accounts Receivable*

Accounts receivable is comprised of revenue collections due from BP. In a liquidation scenario, Accounts Receivable are expected to recover a significant portion of book value. In this Liquidation Analysis, the Debtors expect that a full recovery of Account s Receivable would be realized.

*Note 4 – Mineral Access Rights*

Mineral Access Rights represent the Company's exploratory leasehold position in the Austin Chalk, Subclarksville/Woodbine, Eagle Ford, Buda / Georgetown, Glen Rose, Pettet, Knowles, Middle / Deep Bossier, Cotton Valley and Haynesville formations in East Texas and Louisiana. Reserve values for the Mineral Access Rights are based upon the Reserve Reports. Factors that may impact the Debtors' ability to monetize these assets include (i) the risk that land owners terminate the Debtors' rights to develop these assets in the event of a liquidation and (ii) the early-stage and exploratory nature of the assets, particularly in the current commodity price environment. Management estimates that in a liquidation context gross proceeds related to a sale of the developed producing assets would range from 85% to 95% of estimated reserve value, while the proven developed non-producing assets would range from 50% to 60% and unproven assets would range from 0% to 5% of estimated reserve value. These ranges, which represent a discount to traditional risk factor ranges applied to reserves in a non-liquidation valuation scenario, were selected due to several factors: (i) the limited amount of time available to conduct a sale process given the immediate need for distribution of cash proceeds to stakeholders in a liquidation scenario; (ii) the ability to command market price for the assets is hampered due to the fact that potential acquirers understand the urgency and necessity of the sale. This is only compounded in the current commodity pricing environment where potential acquirers are attempting to purchase assets at a discount to reserve value. Therefore, this effectively represents what we believe the Company would receive in a fire sale scenario.

*Note 5 – Prepaid Assets*

In this Liquidation Analysis, it is assumed that the estate would receive little to no value for the Debtors' prepaid assets.

*Note 6 – Office and Other Equipment*

Property, Plant and Equipment consists of computer hardware, autos & trucks and other miscellaneous equipment. In this Liquidation Analysis, it is assumed that Property, Plant and Equipment will be either resold for parts, or sold as scrap.

*Note 7 - Trustee Fees & Expenses*

Compensation for the Chapter 7 trustee would be subject to the fee guidelines in Bankruptcy Code Section 326(a). The Liquidation Analysis has assumed Chapter 7 trustee fees of 3% of the gross proceeds in the liquidation which have been estimated based on historical experience in similar cases.

*Note 8 - Professional Fees, Expenses* & Wind Down Costs

Compensation for the Chapter 7 trustee's counsel and other legal, financial and professional services provided to the Chapter 7 trustee during the Chapter 7 proceedings beginning at the commencement of the liquidation proceedings and continuing throughout the Wind-Down Period as well as the cost of winding down the Debtors is estimated to range from $3.0 to $4.0 million for the Cubic Asset Debtor and $1.0 to $2.0 million for the Cubic Louisiana Debtor.

*Note 9 - Administrative Claims*

The Liquidation Analysis assumes all accrued and unpaid professional fees and Debtors' expenses as of February 29, 2016 are paid prior to conversion to Chapter 7 or are paid thereafter as Administrative Claims through distributions from liquidation.

*Note 10 – Other Priority Claim*

Other priority claims are calculated through February 29, 2016.

*Note 11 – Prepetition Secured Notes Claim*

The Prepetition Secured Notes Claim is assumed to consist of $98.2 million in principal and accrued interest as of the petition date. The Prepetition Secured Noteholders are expected to receive a partial recovery in the Liquidation Analysis.

*Note 12 – Wells Fargo Claims*

The Wells Fargo Claims are assumed to consist of $29.9 million in principal as of the petition date. The holders of the Wells Fargo Claims are expected to receive a partial recovery in the Liquidation Analysis.

*Note 13 –BP Claims*

The BP Claims are assumed to consist of $6.6 million in net contingent liabilities as of the petition date. There are insufficient proceeds for the holders of the BP Derivative Claim to obtain any recovery in the Liquidation Analysis.

*Note 14 - General Unsecured Claims*

The estimate of General Unsecured Claims included in the Liquidation Analysis is comprised of both Scheduled and Filed Claim amounts and excludes only instances in which the two are clearly duplicative. The claim estimates reflected in this Liquidation Analysis should be considered speculative and subject to material revision. All figures are subject to ongoing review. The Debtors reserve all rights to object to these Claims. There are insufficient proceeds for the holders of Allowed General Unsecured Claims to obtain any recovery in the Liquidation Analysis. This amount would be grossed up by any deficiency claims that may arise.

*Note 15 - Old Equity*

There are insufficient proceeds for holders of Old Equity Interests to obtain any recovery in the Liquidation Analysis.