## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| CUBIC ENERGY, INC., et al., | : | Case No.: 15-12500 (CSS) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| _____: | | Docket No.: 292 |

### <u>OPINION</u>

**BAYARD, P.A.**
Neil B. Glassman
Scott D. Cousins
Justin R. Alberto
222 Delaware Avenue
Suite 900
Wilmington, DE  19801

-and-

**HOLLAND & KNIGHT LLP**
Robert W. Jones
Brent R. McIlwain
Brian Smith
200 Crescent Court, Suite 1600
Dallas TX  75201

Counsel for Debtors and
Debtors-in-Possession

**RICHARDS, LAYTON &
FINGER, P.A.**
Marcos A. Ramos
Brendan J. Schlauch
One Rodney Square
920 North King Street
Wilmington, DE  19801

-and-

**WIENER, WEISS & MADISON, a PC**
John S. Hodge
R. Joseph Naus
333 Texas Street
Suite 2350
Shreveport, Louisiana 71101

Counsel to the Liquidating Trust

Dated: July 6, 2018

Sontchi, J._____

## INTRODUCTION[1]

Before the Court is a Motion seeking interpretation and enforcement of provisions of the Cubic Plan concerning the possible release, discharge, and injunction of claims and causes of action, particularly any claims against the Movants relating to the Louisiana Judgment.

Upon review of the relief requested and the facts herein, the Court finds that any decision it could currently make on the merits of the dispute would constitute an impermissible advisory opinion.  As a result, the Court will deny the Motion in its entirety.

## JURISDICTION & VENUE

The Court's jurisdiction over the Motion is contested for requiring an impermissible advisory opinion.  "The Court has inherent power and a continuing obligation to determine its own jurisdiction."[2]  As such, the Court may consider whether the Motion constitutes an advisory opinion.

To the extent jurisdiction is proper, venue is also proper before the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. §§ 1408 and 1409.  The Court has the judicial authority to enter a final order.

---

[1] Undefined terms used in the Introduction have the meaning set forth below.

[2] *CareSource v. SRC Liquidation Co. (In re SRC Liquidation, LLC)*, 2017 WL 6033019, *3 (Bankr. D. Del. Dec. 1, 2017) (quoting *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1198 (3d Cir. 1991)) (internal quotations omitted).

## BACKGROUND

### A. Procedural History

On December 11, 2015, Cubic Energy, Inc. ("Cubic") and associated entities (collectively, the "Debtors", and post-confirmation, the "Reorganized Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in this Court.[3]

Gloria's Ranch, LLC ("Gloria's Ranch") filed a pre-confirmation motion for relief from the automatic stay to confirm its ability to enforce a judgment (the "Louisiana Judgment") entered against Tauren Exploration, Inc. ("TEI") and others in *Gloria's Ranch, LLC v. Tauren Exploration, Inc., Cubic Energy, Inc., and Exco USA Asset, LLC* (the "Louisiana Litigation").[4]  The motion was later resolved through language added into the Debtors' plan of reorganization (the "Cubic Plan") and the associated confirmation order (the "Cubic Confirmation Order"), which went effective on February 17, 2016.[5]

On May 16, 2017, Calvin A. Wallen ("Wallen") and Fossil Operating, Inc. ("Fossil," together with Wallen, "Movants") filed a *Motion for Order in Aid of Confirmation and Consummation of Chapter 11 Plan Interpreting and Enforcing the Release, Discharge, and*

---

[3] Del. Bankr. 15-12500, D.I. 308, ¶ 5. All references to the docket, cited as "D.I." *infra*, refer to this bankruptcy proceeding unless otherwise stated. Debtors in these Chapter 11 cases are as follows: Cubic Energy, Inc., Cubic Asset Holding, LLC, Cubic Asset, LLC, Cubic Louisiana Holding, LLC, and Cubic Louisiana, LLC.

[4] D.I. 308, ¶ 9; *see Gloria's Ranch, LLC v. Tauren Exploration, Inc., Cubic Energy, Inc., and Exco USA Asset, LLC*, Suit No. 541,768-A, First Judicial District Court, State of Louisiana, Parish of Caddo; *Final Judgment and Judgment on Motions for New Trial*, First Judicial District Court, State of Louisiana, Parish of Caddo (Nov. 24, 2015).

[5] *See* D.I. 184, 187 (Tr. 11:14-12:20).

*Injunction of Certain Claims and Causes of Action* (the "Motion").[6]  Tauren Exploration Inc.

Liquidating Trust (the "Liquidating Trust") filed its preliminary objection to the Motion

on June 6, 2017, and Movants filed their reply on July 5, 2017.[7]  Oral argument was held

on the Motion on July 10, 2017.[8]

### B.  Factual Background

#### a.  *Dispute Relating to the Louisiana Judgment*

On September 17, 2004, Gloria's Ranch granted a mineral lease to TEI in certain

areas in Caddo Parish, Louisiana.[9]  The lease granted TEI the exclusive right to explore

for, and produce minerals from, any and all depths, horizons, and formations under the

land, including the Cotton Valley shale formation.[10]

TEI later assigned an undivided 49% interest in the lease to Cubic.[11] Then, in

March 2007, TEI and Cubic both executed credit agreements with Wells Fargo Energy

Capital, Inc. ("WFEC").[12]  As security for its loans, Cubic mortgaged its interests in

mineral leases with various landowners, including Gloria's Ranch, and collaterally

assigned the profits therefrom.[13]

---

[6] D.I. 292.

[7] *See* D.I. 308, 319.

[8] D.I. 326.

[9] D.I. 292, ¶ 8(a).

[10] *Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.,* 223 So. 3d 1202, 1207 (La. App. 2d Cir. 2017), *reh'g denied* (Aug. 7, 2017), *writ granted,* 231 So. 3d 639 (La. 2017), and *writ granted,* 231 So. 3d 640 (La. 2017), and *writ granted,* 231 So. 3d 642 (La. 2017).

[11] *Id.*

[12] *Id.*

[13] *Id.* at 1208.

4

That same year, Cubic contracted with Fossil to conduct oil and gas operations on the property leased from Gloria's Ranch.[14]  Fossil drilled and completed wells on certain sections of the property.[15]

In 2009, TEI and Exco USA Asset, Inc. ("Exco") negotiated a purchase and sale agreement whereby Exco purchased TEI's 51% interest in the lease as to all depths *below* the base of the Cotton Valley formation, with TEI retaining its interest for the area above the base of the formation.[16]  As a result of the Exco sale, WFEC released the mortgage it had on TEI's interest after receiving repayment pursuant to the credit agreement.[17]  As a condition of WFEC releasing the mortgage, TEI assigned a 10% net profits interest in its rights to WFEC.  On November 9, 2009, Cubic assigned to TEI an overriding royalty interest in its rights in the lease as to all depths below the base of the Cotton Valley formation, which TEI then partially assigned to WFEC.[18]

On December 3, 2009, Gloria's Ranch sent a letter to TEI, Cubic, Exco, and WFEC requesting they provide more information on the monthly revenue and operating expenses of the wells on, or unitized with, the lease.[19]  The letter further articulated the belief that the lease with Gloria's Ranch had expired, in whole or in part, for lack of production of paying quantities.[20] After receiving an unsatisfactory response from TEI,

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

Gloria's Ranch sent another letter to TEI, Cubic, Exco, and WFEC demanding a recordable act evidencing the expiration of the lease. None of the parties released the lease.[21]

Gloria's Ranch subsequently filed suit against TEI, Cubic, Exco, and WFEC for their failure to furnish a recordable act evidencing the expiration of the lease.[22]  Gloria's Ranch entered a settlement agreement with Exco whereby it released Exco from the lawsuit, but the other defendants were taken to trial.[23]  Following a four-day bench trial, the trial court rendered judgment declaring the lease expired and canceled.  The trial court awarded damages to Gloria's Ranch for lost-leasing opportunities, royalties, and punitive damages.  TEI, Cubic, and WFEC were found jointly and severally liable for Gloria's Ranch's damages and attorneys' fees.[24]

On November 23, 2015, a final judgment was entered in favor of Gloria's Ranch in the Louisiana Litigation.[25]  The Louisiana Judgment was subsequently affirmed by the Second Circuit Court of Appeals in Louisiana on June 2, 2017.[26]

b.  *Cubic and TEI Plans*

Following the Louisiana Judgment, Cubic and affiliated Debtors filed for bankruptcy protection in this Court. Gloria's Ranch filed a pre-confirmation motion seeking to lift the automatic stay so that it might enforce the Louisiana Judgment against

---

[21] *Id.* at 1209.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] D.I. 292, ¶ 9.

[26] *Gloria's Ranch*, 223 So. 3d at 1207.

TEI and other non-debtor entities.[27]  The issues in that motion were resolved in language placed in the Cubic Confirmation Order, specifically paragraph 131. Paragraph 131(e) stipulates, among other things, that the automatic stay imposed by section 362(a) does not apply to TEI, WFEC, Exco, or any other non-debtor entity and allows for appeals relating to the Louisiana Litigation to continue.[28] The Cubic Plan itself further contains a plan injunction provision in section 11.4 and releases in section 11.5, both provisions which the Movants invoke before the Court.[29]

On June 3, 2016, TEI filed its own voluntary chapter 11 petition in the Northern District of Texas, Dallas Division (the "Texas Bankruptcy Court").[30]  On March 24, 2016, the Honorable Harlin D. Hale confirmed a plan of reorganization for TEI, as proposed by Gloria's Ranch (the "TEI Plan").[31]  The confirmation order was entered over objections filed by both TEI and Wallen.[32] As part of the TEI Plan, John Hodge, the lawyer representing Gloria's Ranch, was named trustee of the TEI estate (the "Tauren Trustee") for the benefit of the Liquidating Trust.[33]

Under the TEI Plan, the Tauren Trustee has the responsibility to collect and to reduce to money all property of the TEI estate, including its causes of action and other

---

[27] D.I. 133, ¶ 11.

[28] *See* D.I. 184, ¶ 131(e); D.I. 187 (Tr. 11:14-12:20).

[29] *Id.* at Exh. I, §§ 11.4-11.5 (*Tauren Plan*).

[30] D.I. 308, Exh. G (*Tauren Confirmation Order*).

[31] *Id.*

[32] *Id.* at Exh. J-K.

[33] *Id.* at Exh. I, Art. IV.C.6(a).

claims, and to disburse the proceeds to the holders of allowed claims.[34]  Gloria's Ranch is the holder of allowed claims against TEI, including a secured claim based on liens recorded as a result of the Louisiana Judgment.[35]  The TEI Plan also specifically identifies various claims and causes of action that may be pursued by the Tauren Trustee, including (but not limited to) claims arising from, or relating to, the transfer of nearly $14 million away from TEI to Wallen and companies he controls.[36]

> c. *Litigation History since the TEI Plan*

Approximately two weeks after confirmation of the TEI Plan, TEI filed a *Motion to Amend the Confirmation Order* (the "Motion to Amend") seeking to modify the order confirming the TEI Plan so that TEI, rather than the Liquidating Trust, could seek enforcement of the Cubic Confirmation Order.[37] On April 20, 2017, the Texas Bankruptcy Court entered an order denying TEI's Motion to Amend, and the TEI Plan went effective eight days later.[38]

On May 16, 2016, Gloria's Ranch commenced a second, separate action in the First Judicial District Court of Caddo Parish, Louisiana.  Gloria's Ranch asserted claims related to the joint or several liability of TEI, Fossil, Wallen, or others under the Louisiana Judgment, including claims for fraudulent conveyance, alter ego, and veil piercing. The

---

[34] *Id.* at Exh. I, Art. IV.C.3(a)(4).

[35] *Id.* at Exh. I, Exh. B., ¶ 2(J).

[36] *Id.* at ¶ 19.

[37] *Id.* at Exh. L (*Motion to Amend*).

[38] *Id.* at Exh. M (*Amendment Order*).

action notes that Wallen has acts as the owner and controller of TEI.[39]  This second action was later removed from state court to the Texas Bankruptcy Court as an adversary proceeding, given that TEI was included as a party to the action.[40]

Exactly one year later, the Movants filed the Motion in this Court seeking an interpretation and enforcement of the Cubic Plan, specifically sections 11.4 and 11.5.[41] Movants specifically request the Court, among other things, hold as follows:

> a.  Wallen and Fossil are Released Parties, as that term is defined in the Cubic Plan;
>
> b.  Tauren, the Debtors, and the Reorganized Debtors are Releasing Parties as that term is defined in the Cubic Plan;
>
> c.  Any and all claims, causes of actions and remedies that relate to the Louisiana Judgment, relate to or arise out of the acts or omissions giving rise to the Louisiana Judgment or otherwise constitute an attempt to collect on the Louisiana Judgment are within the scope of sections 11.4 and 11.5 of Cubic Plan to the extent such claims, causes of actions and remedies are asserted by or on behalf of a Releasing Party against any Released Party; and therefore
>
> d.  The Tauren Trustee, in its capacity as such, and every other party who is a Releasing Party under the Cubic Plan, including Tauren, the Debtors, the Reorganized Debtors and any entity acting on behalf of the same, are barred from asserting any claim, cause of action or remedy, including alter ego and veil piercing claims and remedies, against Wallen, Fossil, and every other party that is a Released Party to the extent such claim, cause of action or remedy relates to the Louisiana Judgment or is an attempt

---

[39] *Id.* at Exh. F (*Petition in First Judicial District Court, Caddo Parish, Louisiana*).

[40] *Id.* (*Memorandum Order of United States District Court, Western District of Louisiana*).

[41] *See* D.I. 292, Exh. C.

to hold Wallen, Fossil, or any other Released Party liable
for damages under the Louisiana Judgment.[42]

In response, the Liquidating Trust contends that the Motion is procedurally
deficient for a number of reasons, and nevertheless the Cubic Plan's releases are limited
and do not bar the Liquidating Trust's possible actions against Movants.[43]

## LEGAL DISCUSSION

The Liquidating Trust contends the Motion is procedurally improper as it (1) asks
the court to issue an advisory opinion, (2) seeks declaratory or injunctive relief without
an adversary proceeding, (3) moves for relief without proper notice from potentially
interested parties, and (4) is otherwise *res judicata* barred.[44]  To the extent the Liquidating
Trust proves one or more of these procedural issues, the Court may be barred from
reviewing the substance of the Motion.  The Court accordingly reviews the procedural
arguments before turning to the merits.

The Liquidating Trust begins by arguing that granting the Movants' requested
relief would require the Court to issue an impermissible advisory opinion.

Article III of the Constitution restricts the Judicial Power of the United States to
"cases" and "controversies," and prevents federal courts from deciding "questions that
cannot affect the rights of litigants in the case before them."[45]  Federal courts, including

---

[42] *Id.*

[43] D.I. 308, ¶¶ 29-70.

[44] *Id.* at ¶¶ 61-70.

[45] *Unalachtigo Band of the Nanticoke Lenni Lenape Nation v. Corzine*, 606 F.3d 126, 129 (3d Cir. 2010) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)) (internal quotations omitted).

bankruptcy courts, are also barred from giving "opinions advising what the law would be upon a hypothetical state of facts."[46]  To allow decisions on these types of matters would be to open the door to advisory opinions, over which the court has no jurisdiction.[47]

In a bankruptcy context, the Third Circuit has determined that an opinion is not advisory where it actually invalidates a clause, orders a party to do something, or otherwise resolves the parties' litigation.[48]  To the extent a bankruptcy opinion does "nothing to resolve whether … courts would be required to abide by it, … the opinion ha[s] no legal effect" and is merely advisory.[49]  But an opinion that has some valid "legal effect" will not be advisory, even if the proceeding "sought to impact [a] state proceedings."[50]

The Liquidating Trust points the Court to *Coffin v. Malvern Federal Sav. Bank*, 90 F.3d 851, 853-54 (3d Cir. 1996).  *Coffin* concerned a bankruptcy court order which found that a debtor's bankruptcy confirmation had not discharged a bank's mortgage lien.[51]  On

---

[46] *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)) (internal quotations omitted).

[47] *Id.*; *see Unalachtigo*, 606 F.3d at 129 (quoting *Steel Co. v. Citizens of a Better Env't*, 523 U.S. 83, 94 (1998)); *Chafin*, 568 U.S. at 172 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)) ("Article III … restricts the power of federal courts to 'Cases' and 'Controversies.' Accordingly, to invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.").

[48] *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d at 421-22 (citing *In re McDonald*, 205 F.3d 606, 609 (3d Cir. 2000)).

[49] *Id.* at 422 (citing *In re Martin's Aquarium, Inc.*, 98 Fed.Appx. 911, 912 (3d Cir. 2004)).

[50] *Id.* (citing *Matter of Shondel*, 950 F.3d 1301, 1309 (7th Cir. 1991) and *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 143 (2009)).

[51] *Gonzalez v. Corning*, 885 G.3d 186, 194 (3d Cir. 2018) (citing *Coffin*, 90 F.3d at 852-53).

appeal, the Third Circuit found the bankruptcy court's order to be an advisory opinion, since no actual controversy existed between the parties.[52]

In reaching this conclusion, the *Coffin* court emphasized that the judgment of the bankruptcy court could not bind a future court considering the same discharge survival issue.  The debtor did not move for an order of lien avoidance, nor had the bank attempted to enforce its lien.[53]  If and when the parties did properly move the issue before a court, it would still be for the future court to determine "its interpretation of the terms of the Confirmed Plan, as well as the terms of the mortgage, applicable state law, and of course, that court's finding of fact."[54]  As a result, the bankruptcy court's "advice … [had] no legal effect."[55]

*Coffin* further notes that, to the extent "the case before us in its present posture is somewhat analogous to one seeking a declaration of rights[,]" a review of the proceeding under the rubric of ripeness may be appropriate.[56]  In reviewing for a justiciable controversy in ripeness, courts look primarily to three factors: (1) the adversity of the interest of the parties, (2) the conclusiveness of the judicial judgment, and (3) the practical help or utility of that judgment.[57]  The Third Circuit in *Coffin* determined that "while there is no question of the adversity of the interest of the parties," any "conclusiveness of

---

[52] *Coffin*, 90 F.3d at 853.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 854 (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 n.9 (3d Cir. 1990)).

[56] *Id.* at 853.

[57] *Id.* (citing *Step-Saver*, 912 F.2d at 643).

judicial judgment and any utility of that judgment are totally lacking … [since] whether the Bank's lien is enforceable will eventually have to be made by another court in foreclosure proceedings …"[58]

The present Motion does not ask the Court to strike a provision in the Cubic Plan, prevent ongoing litigation, or force the parties to do something.  Movants rightly point to language in the Liquidating Trust's objection that signals a willingness to file or join claims against the Movants, but the Tauren Trustee has yet to do so.[59]  The only action currently pending against Movants that has been brought to the Court's attention is the adversary proceeding filed against them by Gloria's Ranch.[60]

That the Tauren Trustee's litigation may be imminent, however, is not a sufficient reason to provide an advisory opinion.  Even were the Court to consider the merits of the Motion, the same dispute would need to be re-litigated in front of the Texas Bankruptcy Court or a Louisiana state court once the Tauren Trustee joins or brings claims against the Movants.  The type of claims the Tauren Trustee brings may have a significant impact on the effect of the Cubic Plan, which will require a future court to come up with its own interpretation of the Cubic Plan, applicable state law, and appropriate fact finding. Indeed, "the parties' legal rights cannot be decided until the underlying factfinding has been done."[61]

---

[58] *Id.*

[59] *See* D.I. 308, ¶¶ 19, 34, 55.

[60] *Id.* at Exh. F. The action filed by Gloria's Ranch has been removed to the Texas Bankruptcy Court as an adversary proceeding since TEI is an additional defendant in the action.

[61] *Step-Saver*, 912 F.2d at 649 n.9.

In other words, to decide on the Motion at this stage would be to indulge in appraising a "hypothetical set of facts."[62]  Pivotal to this Motion is whether the claims the Tauren Trustee brings fall within certain exceptions to the Cubic Plan's releases and injunctions.  Yet these exceptions may very well hinge on the nature of the claims brought by the Tauren Trustee and the factual and legal grounds surrounding them.

Even applying the ripeness rubric as the Third Circuit did in *Coffin*, the Court does not find a reason to find a justiciable controversy.  Closely parallel to the analysis in *Coffin*, the Motion finds two unquestionably adversarial parties arguing over a Motion where "conclusiveness of judicial judgment and any utility of that judgment are totally lacking."[63]  A review of the Motion on the merits would not have a "judicial effect on the outcome of … future … proceedings[,]"[64] leading the Court to the conclusion that declaratory relief is not appropriate at this stage.

Nor does any of this change because the parties have moved and briefed the issue before the Court.[65]  The rule remains that "a dispute must have ripened into a legal case before a federal court can act; the case must not lie merely in the future."[66]  Here, the Movants have not successfully shown a case involving both them and the Tauren Trustee,

---

[62] *Lazy-Day*, 724 F.3d at 421 (citing *Chafin*, 568 U.S. at 172); *see also In re Heyden*, 570 B.R. 489, 493 (Bankr. W.D. Pa. 2017) (citing *In re Olson*, 557 B.R. 851, 855 (Bankr. W.D. Pa. 2016)).cd

[63] *Coffin*, 90 F.3d at 854.

[64] *Id.*

[65] *See id.* ("That the Bank may have asked the bankruptcy court to interpret the Plan with respect to the question of the survival of its lien, and that the parties advanced opposing positions, does not alter the conclusion that what the court said in this respect was an advisory opinion.").

[66] *In re Outboard Marine Corp.*, 304 B.R. 844, 860 (Bankr. N.D. Ill. 2004) (quoting *Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir. 1989) (internal quotation marks omitted).

or a means for the dispute to end with the Motion.  While the dispute may fall within the scope of the Court's power at some point in the future, it does not fall within its jurisdiction today.[67]

The Court therefore declines to opine on the Motion since to do otherwise would be to issue an advisory opinion beyond the Court's jurisdiction.  Because any further determination would counter the analysis above, the Court declines to review the parties' remaining procedural and substantive arguments.[68]

## CONCLUSION

For the foregoing reasons, the Defendant's Motion is denied. An order will be issued.

---

[67] *See also In re Trichilo*, 540 B.R. 547, 551 (Bankr. M.D. Pa. 2015) (finding that although the court had the power to determine an action, it could not do so if it meant rendering an advisory opinion).

[68] *See In re Demeza*, 582 B.R. 868, 879 (Bankr. M.D. Pa. 2018) (finding it appropriate for "a court not to decide more than is necessary to decide the subject dispute …" on the grounds of avoiding an advisory opinion).